UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------x
CHRISTOPHER KNOX,              :
                               :
          Plaintiff,           :
                               :
v.                             :     Civil No. 3:06CV1476(AWT)
                               :
CITY OF HARTFORD, PHILLIP      :
J. CLARK and JOHN DOE,         :
                               :
          Defendants.          :
-------------------------------x
```

**MEMORANDUM OF DECISION**

Christopher Knox ("Knox") brought this action against the City of Hartford, police officer Phillip Clark ("Clark") and police officer John Doe. The complaint contains claims for assault and battery; negligence; and false arrest, excessive force and failure to intervene, in violation of 42 U.S.C. § 1983. The court granted summary judgment as to all claims except the excessive force claim against Clark. The court held a bench trial on that claim on January 10 and 11, 2011. The court's findings of fact and conclusions of law are set forth below.

A person, even if he or she is being lawfully arrested, has a constitutional right to be free from the use of excessive or unreasonable force. Graham v. Connor, 490 U.S. 386, 394 (1989). In effecting an arrest, a police officer is entitled to use such force as a reasonable police officer would think is required. Id. at 395. This may include such physical force as is reasonably

1

necessary to subdue a person who is struggling with an officer. Keeney v. City of New London, 196 F. Supp. 2d 190, 198 (D. Conn. 2002) (citing Graham, 490 U.S. at 496). On the other hand, a person is not justified in using physical force to resist an arrest regardless of whether the arrest is legal. Id.

To determine whether the force used by the defendant was excessive, the court must determine whether the amount of force used was that which a reasonable police officer would have used in similar circumstances. Graham, 490 U.S. at 396. The reasonableness of a particular use of force must be judged from the perspective of a reasonable police officer on the scene in light of all the objective facts and circumstances that existed at the time of the incident. Betancourt v. Slavin, 676 F. Supp. 2d 71, 77 (2009).

On August 20, 2004, Knox attended a concert at the Comcast Theatre (the "Meadows") with his girlfriend. That evening, as Knox and his girlfriend were walking, his girlfriend slipped, fell and became unresponsive. As Knox was carrying her in the direction of the front gate, emergency medical technicians ("EMTs") approached to help. As the EMTs were carrying his girlfriend, Knox became concerned about how they were carrying her, and he intervened. He put his girlfriend onto his shoulder and started walking towards the front gate. After Knox had taken a few steps, the two EMTs who had been carrying Knox's girlfriend

tackled Knox, taking him to the ground. The EMTs then attempted to regain control of Knox's girlfriend. Security guards and/or other EMTs had observed what was occurring, and at this point there were six to eight EMTs and security guards involved with Knox in the struggle for control over his girlfriend. At some point, Knox got up on his knees and was then taken to the ground a second time. He landed face down on the pavement with his right arm beneath him.

Defendant Clark was on private duty at the Meadows providing security for the event along with several other Hartford police officers, including then Sergeant Karen Boisvert ("Boisvert"). Clark, Boisvert and another officer were in the vicinity of the front gate of the Meadows when they were approached by an EMT who told them that there was a disturbance and assistance was needed. Meanwhile, other security officers on the staff of the Meadows were also being notified. All of these individuals headed towards the place where Knox was engaged in a scuffle with the EMTs and security guards. There was also a patron, referred to by the parties as the "good Samaritan," involved in the struggle, assisting the EMTs and security guards. When Clark started towards the scene of the disturbance, he could not see that group of people. When he came around a building and first saw the gathering of people, the people in the group were on the ground. The security guards and EMTs were attempting to pull Knox's

girlfriend from Knox's grasp.  As Clark and Boisvert approached, the security guards and EMTs managed to free her from Knox's grasp and put him face down with his hands behind his back.  Two or three security guards and/or EMTs assisted in holding Knox down as Clark crouched over him and fastened the handcuffs.

Although Knox testified that he was not injured during the scuffle with the EMTs and security guards, i.e. prior to the time when he was handcuffed, the injuries to his head, left shoulder (abrasions), right shoulder (a smaller abrasion) and knee are consistent with him being taken to the ground while carrying his girlfriend over his shoulder, then struggling with a group of individuals while lying on his left side on the ground and then being forced face down onto the pathway and held by two or three individuals while he was being handcuffed.

After Clark put the handcuffs on Knox, he checked to make sure they were not too tight.  Knox testified that after he was handcuffed, his wrists were injured.  He testified that the handcuffs were so twisted that officers who saw him at the police station commented about them.  However, the demonstration during the trial showed that the handcuffs are designed in such a way that they cannot become twisted.

After Knox was handcuffed, he was assisted to his feet, and Clark and Boisvert escorted him away from a crowd that had gathered around the area of the disturbance.  They took him to a

grassy area behind a shed, which was located between the scene of the disturbance and the front gate of the Meadows, i.e. in the direction from which Clark and Boisvert had approached the scene of the disturbance. Knox was placed sitting on the ground with his back against the shed. At this time, there was a situation involving the good Samaritan which temporarily occupied Clark's attention, and Knox was kept under observation by Boisvert.

When Clark returned, he began to escort Knox towards the front gate. Knox's excessive force claim relates to what occurred between the time Clark began to escort him towards the front gate and the time they reached the area of the front gate. Knox was still handcuffed as Clark escorted him. Knox testified that Clark gave him a firm shove forward and tripped him so that Knox fell to the ground. He testified that he was on the ground for just a brief moment and then Clark lifted him up. He testified that, after he was lifted up, he began screaming in pain and Clark again shoved him forward and tripped him so that he fell to the ground. Knox testified that Clark then lifted him again and they continued towards the front gate but then Clark again knocked him to the ground, this time really roughly knocking him down and shoving him into the ground. Knox testified that his hands, which were still cuffed behind his back, were yanked up towards his neck by Clark, who then put a knee into Knox's back and placed his hand on Knox's head, shoving

5

it into the pavement. Knox testified that he screamed at Clark, asking him why he was doing this, but got no response. He testified that the left side of his forehead and his left shoulder were injured at this time. He testified that Clark then lifted him up again and escorted him past the front gate and out to a waiting vehicle to be transported from the scene.

The incident involving Knox and the EMTs and security guards occurred on the main pathway leading towards the front gate of the Meadows. At the time the disturbance occurred, there were a good number of people still at the venue, which is why Knox was taken to the area behind the shed. To get to the area behind the shed, Clark and Boisvert escorted Knox on this main pathway towards the front gate but turned and went around the side of the shed before getting to the front gate. The area behind the shed was a grassy area. It was not brightly lit but the lighting was decent. The distance from the spot next to the shed from where Knox was seated to the main gate was less than approximately fifty feet. The area was visible to any patron who was in the area of the front gate, and there were patrons in that area at the time. Thus Clark and Knox were visible to patrons who were in the area of the front gate during the time period Knox claims Clark repeatedly shoved and tripped him. They were also close enough that screaming by Knox would likely have attracted attention. When Clark approached Knox to begin escorting him to

the front gate, Boisvert was with Knox.  Clark held Knox as he was escorted to the front gate, and Boisvert accompanied them. She remained with Clark and Knox the entire time Knox was being escorted past the front gate and into the parking area and never saw Clark shove or trip Knox.  The court finds that Knox was not tripped or shoved to the ground by Clark at any time.

Based on the foregoing, the court concludes that Knox has failed to prove by a preponderance of the evidence his Section 1983 claim that Clark used excessive force against him during the time when Clark was escorting him from the shed towards the front gate.

Accordingly, the Clerk shall enter a judgment in favor of defendant Clark with respect to Knox's claim for use of excessive force in violation of 42 U.S.C. § 1983.

Signed this 28th day of February, 2011 at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge